**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Kirby Waddell,** | ) | **CASE NO. 07 CV 3540** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Sears Holding Corporation,** *et al.***,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion for Summary Judgment of Defendants Kmart Corporation and Mark Wyand (Doc. 20). Also pending is the Motion for Summary Judgment of Defendants Eschweiler, Hovan, Murphey and Glandorf (Doc. 24). This is a civil rights action arising out of plaintiff's arrest at a Kmart store. For the reasons that follow, the motion filed by Kmart Corporation and Mark Wyand is GRANTED in PART. The motion filed by the remaining defendants is GRANTED. The remaining claims are REMANDED to state court.

**FACTS**

1

Plaintiff, Kirby Waddell, filed this action in state court against defendants, Sears Holdings Corporation, d/b/a Super K-Mart ("K-Mart"), Michael Bice, Scott Joreski, Mark Wyand, Denise Thomas, Christy Birnie, Cindy Eschweiler[1], Police Officer Hovan, Police Officer Murphy and Police Officer Glandorf.  This Court previously granted the motion to dismiss filed by Michael Bice, Scott Joreski, Denise Thomas and Christy Birnie.

Plaintiff entered a Super K-Mart on October 12, 2006, in order to purchase brake fluid. K-Mart's loss prevention staff began watching plaintiff on their surveillance cameras after observing him acting suspiciously.  While at the store, plaintiff draped a shirt over the front of his shopping cart.  He then began placing items in the front of the cart and subsequently placing the items inside his jacket.  Plaintiff's odd behavior continued throughout his shopping trip.  He is frequently seen bending down and moving around with the shirt draped over the front of the cart and is specifically seen engaging in this behavior in the clothing section. At his deposition in this matter, plaintiff testified that he was just "playing" with K-Mart's employees, who plaintiff believed were watching him.  Due to the nature of the surveillance cameras, plaintiff sometimes is out of one camera's reach and is ultimately picked up by another camera.  As such, there are brief moments when plaintiff cannot be seen.  Ultimately, plaintiff abandoned his cart and attempted to leave the store.

At this point defendant Wyand approached plaintiff and requested that plaintiff accompany him to K-Mart's back room.  Plaintiff refused.  An altercation ensued during which defendant Wyand grabbed plaintiff by the chest or collar area.  Within seconds, numerous other

---

[1]    Although not identified as such in the caption of the complaint, Cindy Eschweiler is also a police officer.

individuals became involved and plaintiff was physically restrained. It appears from the video that some type of search, which included the opening of plaintiff's jacket, was conducted by K-Mart employees. No K-Mart merchandise was discovered. Although plaintiff claims he was dragged, twisted and pulled from the front of the store to the back, the video surveillance tape plainly shows that such conduct did not occur. Plaintiff's hands were placed behind his back and he was escorted to the back room. Meanwhile, another K-Mart employee had telephoned the City of Brooklyn Police Department. Plaintiff was in the back room for "three to eight to ten minutes" before the police arrived. Officers Eschweiler, Hovan, and Murphy entered K-Mart through a back door and were escorted to the back room. At some point the officers were informed that K-Mart's loss prevention specialists had not located any property on plaintiff. The officers proceeded to review the surveillance video. At some point in time, a K-Mart employee prepared a loss report, indicating a loss amount of $62.03.[2] Officer Murphy believes this amount represents an estimate of the value of the items plaintiff placed in his pockets. Upon review, and after discussions with K-Mart employees, plaintiff was arrested, searched[3] and charged with robbery.

      Thereafter, plaintiff was handcuffed and escorted out the back door and into a police vehicle. He was taken to jail and spent four days there before posting bond. It appears that Officer Glandorf, who was not at the scene, prepared the Case Information Form, which was used by the prosecutor. The prosecutor apparently used the Case Information Form when

---

[2] K-Mart personnel recovered eleven boxes of Visine and one bottle of Pepto-Bismol in the clothing department.

[3] It is not entirely clear at what point in time the officers searched plaintiff.

3

presenting the case to the grand jury.  The grand jury ultimately indicted plaintiff.  His case proceeded to a bench trial and the trial judge granted plaintiff's motion for acquittal.  The trial judge commented,

> ....I don't think there was ever any probable cause to arrest him in the first place....  But certainly, there is a far, far lack of evidence in my opinion, even with the support of the indictment, especially if you look at the law of the State of Ohio.

Thereafter, plaintiff filed this lawsuit asserting seven claims for relief.  Count one is a claim for unreasonable search and seizure, excessive force, false arrest and malicious prosecution asserted pursuant to 28 U.S.C. § 1983.  Count two is a claim for conspiracy to violate civil rights asserted pursuant to 28 U.S.C. § 1985.  Count three is a claim for malicious prosecution.  Count four asserts intentional infliction of emotional distress.  Count five is a state law claim for false arrest, false imprisonment and invasion of privacy.  Count six, which this Court previously dismissed, alleged excessive force.  Count seven alleges negligent hiring and is asserted only against defendant K-Mart.

Defendants move for summary judgment on all claims and plaintiff opposes the motions.

**STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

### ANALYSIS

1. Summary judgment motion filed by K-Mart and defendant Wyand (sometimes, collectively, "K-Mart Defendants")

   A. Count one

The K-Mart Defendants argue that count one fails because they are not state actors. Plaintiff argues that the K-Mart Defendants are state actors and, therefore, liability may be

imposed.

"Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entertainment*, 428 F.3d 629, 636 (6th Cir. 2006). Thus, liability is imposed on a private actor only if its conduct can be fairly attributed to state law. *Id.* The Supreme Court set forth three tests to determine whether state action exists in a particular case: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship test." *Id*. (*quoting Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)).

In this case, plaintiff argues that state action is present under both the public function and symbiotic relationship tests. Each will be addressed in turn.

> Under the public function test, a private entity is said to be performing a public function if it is exercising powers traditionally reserved to the state, such as holding elections, taking private property under the eminent domain power, or operating a company-owned town.

*Romanski*, 428 F.3d at 636.

In *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003), the Sixth Circuit addressed a case with facts nearly identical to the instant case. There, a private security guard was informed by a salesperson that a patron was suspected of shoplifting. The security guard stopped the patron and made her return to the fitting room, whereupon the security guard and the manager searched her purse. The security guard then made the patron enter the fitting room and the manager searched the patron by having her remove her coat, suit jacket and lift up her shirt. No merchandise was found and the patron left the store. In concluding that the public function test was not satisfied on the facts, the Sixth Circuit noted that the detention of a shoplifter is not a function typically reserved to the state. Rather, the central motivation is private, *i.e.*, the

6

protection of personal property. The court then summarily concluded that "applying these principles..., we are satisfied that the...security officer was not performing a function exclusively reserved to the State when he stopped and searched [plaintiff]." Accordingly, state action did not exist under the public function test.

Although not cited by plaintiff, the Sixth Circuit recently addressed a situation in which a private security guard was deemed to be a state actor under the public function test. In *Romanski v. Detroit Entertainment*, 428 F.3d 629, 636 (6th Cir. 2006), a casino patron was taken to an interview room by security personnel after having been observed removing an abandoned token from a slot machine. The security guards were licensed by statute to be "private security police officers," pursuant to which the officers are afforded plenary arrest powers. The guard carried a security badge and handcuffs. In concluding that state action existed under the public function test, the Sixth Circuit noted that plenary arrest power is a power typically reserved to the state. Notably, however, the court distinguished *Chapman* on the grounds that it involved the shopkeeper's privilege, which does not provide private security personnel with the power of plenary arrest. Importantly, the fact that the casino did not permit its security officers to exercise the power of arrest afforded under the statute was not relevant. Rather, the court focused on the powers the state afforded to the security guards, not the powers they actually exercised.

This Court finds *Chapman* virtually indistinguishable from this case. There is no evidence that the security guards employed by K-Mart are licensed police officers or otherwise possess any statutory authority to engage in any function typically reserved to the state. Rather, the sole basis for their authority is the shopkeeper's privilege, which the court in *Romanski* reaffirmed does not constitute a public function. Accordingly, the Court finds that state action

7

does not exist under the public function test.

The Court now turns to the second basis for state action, *i.e.*, the symbiotic relationship test.  Under the symbiotic relationship test, state action exists if "there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834.  In essence, "it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983."  As a general matter, "the inquiry is fact-specific, and the presence of state action is determined on a case-by-case basis." *Id*.

The K-Mart Defendants argue that there is no evidence that the government had any nexus or influence whatsoever over K-Mart's management and policies.  In response, plaintiff argues that the symbiotic relationship test is satisfied because K-Mart employees called the police while other employees investigated the situation.  In addition, according to plaintiff, the police entered a back door in a "customary procedure" used by the police department when allegations of shoplifting were made.  Plaintiff also claims that the police did not conduct an independent investigation of the allegations.

Upon review, the Court finds that plaintiff fails to satisfy the symbiotic relationship test as a matter of law.  As an initial matter, plaintiff points to no evidence suggesting that the K-Mart Defendants and the Brooklyn police officers had a "customary plan" regarding the detention and arrest of shoplifters.  The fact that the K-Mart security personnel opened the back door to allow the officers to enter does not establish a "customary plan."  Plaintiff points to no evidence suggesting that this procedure is followed each time the police are called.  Regardless, it is well-established that "a request for assistance from a public police officer cannot be

8

sufficient to form a nexus between the state and the private action." *Lansing v. City of Memphis*, 202 F.3d 821, 833 (6th Cir. 2000).  Contrary to plaintiff's argument, it is evident that the police officers in fact conducted their own investigation in this matter.  Plaintiff himself states in his brief that the officers questioned him and searched him, even though the K-Mart Defendants had already performed a search.  Moreover, it is undisputed that the police officers reviewed the security footage before determining whether to arrest plaintiff.  Therefore, the Court finds that plaintiff fails to provide evidence from which a jury could conclude that a sufficient nexus exists between the K-Mart Defendants and the police officers such that state action exists under Section 1983.  Accordingly, summary judgment in favor of the K-Mart Defendants is warranted with respect to court one.

        B.      Count two

In count two plaintiff alleges that defendants conspired to violate his constitutional rights under 28 U.S.C. § 1985.  The K-Mart Defendants argue that summary judgment is appropriate because there is no evidence establishing a conspiracy and defendants had probable cause to detain plaintiff.  In response, plaintiff essentially reargues the facts applicable to the symbiotic relationship test.  In reply, the K-Mart Defendants argue that plaintiff also fails to identify any facts indicating that the conspiracy was motivated by class-based discriminatory animus.

> To prove a conspiracy under section 1985 , a plaintiff must show that (1) the defendants conspired together for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (2) the defendants committed an act in furtherance of the conspiracy which caused injury to person or property or a deprivation of any right or privilege of a citizen of the United States; and (3) the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

*Baseball at Trotwood v. Dayton Professional Baseball Club*, 204 Fed.Appx. 528, 539 (6 th Cir. 2006)(citing *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.1999)).

9

Upon review, the Court finds that plaintiff fails to provide evidence sufficient to create a genuine issue of material fact with regard to either the first or third factors. Specifically, while plaintiff describes the activities of both the K-Mart Defendants and the police officers, there is no evidence suggesting that these parties' actions occurred as the result of some type of agreement among the parties. Moreover, plaintiff offers no evidence whatsoever that any such conspiracy was motivated by racial or class based discriminatory animus. Therefore, plaintiff's Section 1985 claim fails as a matter of law.[4]

    C. State law claims

Having disposed of all of the federal claims asserted against the K-Mart Defendants, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997). The Court finds that the state court is the proper forum to address these claims. Accordingly, these claims are remanded back to state court.

   2. Motion for Summary Judgment of Defendants Eschweiler, Hovan, Murphey, and Glandorf (sometimes, collectively, "Police Officer Defendants")

    A. Count one

The Police Officer Defendants move for summary judgment on count one of plaintiff's complaint on the grounds that no constitutional violations exist. In addition, they argue that they are entitled to qualified immunity.[5]

---

[4] For these same reasons, the remaining defendants are also entitled to summary judgment on this claim.

[5] As set forth herein, the Court agrees with the Police Officer Defendants that no constitutional violation occurred. Thus, summary judgment is appropriate. For these same reasons, the

The Police Officer Defendants argue that there was no excessive force because they used only the force reasonably necessary to search and arrest plaintiff.  They point out that plaintiff testified that none of the officers hit or kicked him.  Plaintiff does not respond to the excessive force argument in any fashion.  Upon review, the Court agrees with the Police Officer Defendants that plaintiff cannot sustain a claim for excessive force.

The Police Officer Defendants also argue that plaintiff's Section 1983 claims for unreasonable search and seizure, false arrest and malicious prosecution are barred because probable cause existed to arrest and prosecute plaintiff.  The Court will review each argument in turn.

The Police Officer Defendants argue that an arrest is not unlawful provided probable cause exists to support either the crime charged or a related offense.  In this case, plaintiff argues that theft is related to robbery.  According to the Police Officer Defendants, probable cause existed to arrest plaintiff for theft, even assuming probable cause did not exist as to robbery, the actual crime with which plaintiff was charged.   In response, plaintiff points out that the state court trial judge dismissed the robbery charge and, in doing so, stated that he doubted probable cause existed for the arrest.  According to the judge, there was no theft because plaintiff did not remove any objects from the store.  Plaintiff also argues that probable cause to arrest plaintiff did not exist because the Police Officer Defendants searched plaintiff and found no items.  Thus, the absence of items recovered from the search negates probable cause.  Plaintiff also points out that plaintiff was not charged with theft and that the Police Officer Defendants lacked probable cause to charge plaintiff with robbery.

---

Police Officer Defendants are entitled to qualified immunity.

With regard to the false arrest and unlawful seizure aspects of count one, the Court agrees with the Police Officer Defendants that the existence of probable cause defeats plaintiff's claim.

Probable cause has been defined by the Supreme Court as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires "only the probability of criminal activity not some type of 'prima facie' showing." *Criss*, 867 F.2d at 262 (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). The quantum of proof necessary to establish probable cause is "significantly lower" than the amount required for proof of guilt. *Id*. at 262 n.1. In fact, the constitutionality of an arrest does not depend on whether the suspect actually committed a crime. *Michigan*, 443 U.S. at 36. The mere fact that a suspect is later acquitted of the offense is irrelevant to whether the arrest was lawful. *Id*.

The Police Officer Defendants correctly note that an arrest is not unlawful even if probable cause is lacking vis à vis the stated charge, provided there was probable cause to arrest the suspect for a closely related offense. *Avery v. King*, 110 F.3d 12, 14 (6 th Cir. 1997)(probable cause need not exist for charged crime provided probable cause to arrest existed for closely related offense); *Cain v. Irvin*, 2008 WL 2776863 (6th Cir. July 17, 2008)(same). Further, the Court finds that the offense of theft is a lesser included offense to that of robbery. As such, the offenses are sufficiently related such that the existence of probable cause to arrest for theft would render the arrest lawful. *See*, *Avery*, 110 F.3d 12. (arrest deemed lawful where the only element absent from charged crime and related offense was use of force).

The Court now turns to whether the facts in this case support a finding that the Police Officer Defendants had probable cause to arrest plaintiff for theft. Upon review of the surveillance video and the relevant law, the Court finds that reasonable minds could only conclude that probable cause supports the arrest. Both the plaintiff and the state court judge place much emphasis on the fact that plaintiff did not remove any merchandise from K-Mart. As the Police Officer Defendants point out, however, actual removal of items is not a necessary element of the offense of theft. Rather, the statute provides,

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> ***

O.R.C. § 2913.02.

In a case with nearly identical facts, an Ohio court interpreted this statute to cover the situation in which a patron removes items from a display, conceals them on her person, disposes of the items inside the store and then exits the premises. *See, State v. Williams*, 475 N.E.2d 168 (Ohio Ct. App 1984). In this case, the video surveillance depicts plaintiff removing items from the shelves in the pharmacy department and placing them inside his jacket. Plaintiff further admits that K-Mart personnel later discovered the items hidden under a clothing rack in another part of the store. The Police Officer Defendants viewed the surveillance tape before arresting plaintiff. Based on the law in Ohio, as well as the facts of this case, the Court finds that probable cause exists to support an arrest for theft. As such, the fact that probable cause may not have

13

supported the charge of *robbery* is of no moment.  Nor is the Court bound by the comments made by the state court judge regarding the arrest.  That judge was not specifically considering whether probable cause existed to arrest plaintiff for theft.  Moreover, there is no indication that he considered the *Williams* case.  The *Williams* decision disposes of plaintiff's argument that probable cause did not exist because no items were discovered on plaintiff's person.  *Williams* specifically holds that the crime of theft occurs even absent the removal of items from the premises.  As such, the Police Officer Defendants are entitled to summary judgment.

With regard to plaintiff's claim for unlawful search, the Police Officer Defendants argue that they searched plaintiff incident to a lawful arrest.  As such, there can be no claim for unlawful search.  Plaintiff does not respond to the Police Officer Defendants' argument.  Nor does plaintiff present any argument in support of his unlawful search claim.  Having concluded that the arrest was lawful, the Court finds that plaintiff cannot sustain a claim for unlawful search.

The Court now turns to the malicious prosecution claim asserted in count one.  The Police Officer Defendants argue that the grand jury indictment is dispositive of plaintiff's claim.  According to these defendants, the fact that the grand jury indicted plaintiff for robbery necessarily means that probable cause existed for the prosecution.  In response, plaintiff claims that the grand jury indictment is not dispositive because there is evidence of significantly irregular grand jury proceedings.  According to plaintiff, the fact that there was absolutely no evidence supporting a charge of robbery necessarily means some significant irregularity occurred in the grand jury proceedings.

Upon review, the Court finds that the Police Officer Defendants are entitled to summary

judgment on plaintiff's claim for malicious prosecution as asserted in count one. It is well settled that, "an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Cook v. McPherson*, 273 Fed. Appx. 421 (6th Cir. April 2, 2008)(*quoting Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)). *See also*, *Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002). An exception to this rule exists, however, if the indictment was obtained through perjured testimony. *Cook*, 273 Fed. Appx. at 424. In addition, the parties concede that evidence of "significant irregularities" in the grand jury proceedings overcomes the rule in *Barnes*. In this case, the parties do not dispute that plaintiff was indicted by the grand jury. Although plaintiff claims there were significant irregularities, he fails to point to any evidence supporting his claim.[6] Simply put, there is no evidence that false testimony was presented or that any other irregularity existed during the grand jury proceedings. As such, plaintiff's claim fails as a matter of law.[7]

---

[6] In a footnote, plaintiff states that his December 12, 2007 request for grand jury transcripts was denied on December 31, 2007. This Court is at a loss as to plaintiff's statement. As the docket reflects, this Court never received or ruled on a request for grand jury transcripts. In addition, although plaintiff argues that the loss report is "false," he provides no evidence supporting this argument. In fact, plaintiff does not provide the Court with the loss report and, according to the K-Mart Defendants, plaintiff propounded no discovery and took no depositions regarding his claims against these defendants.

[7] Defendant Glandorf also argues that he is entitled to absolute immunity because his only involvement in this matter consisted of preparing the case information form for use by the prosecutor. The Court need not reach this issue because the grand jury indictment insulates all of the Police Officer Defendants from liability in any event.

B. Counts three and five[8]

Counts three and five assert state law claims for malicious prosecution and false arrest, respectively.  For the same reasons the constitutional claims fail, the state law claims fail as well. Probable cause exists to support the arrest and the grand jury indictment insulates defendants from liability as to the malicious prosecution claim.  Accordingly, the Police Officer Defendants are entitled to summary judgment on counts three and five.

C. Count four

The Police Officer Defendants move for summary judgment on count four, which asserts intentional infliction of emotional distress.  The Police Officer Defendants argue that the claim fails because plaintiff cannot show that these defendants intended to cause severe emotional distress.  In addition, the Police Officer Defendants argue that there is no evidence that they engaged in any outrageous conduct.  Alternatively, defendants argue that their conduct was privileged.  In response, plaintiff claims that the Police Officer Defendants acted outrageously by illegally searching, arresting, jailing and prosecuting him.

Under Ohio law, in a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.  *Phung v. Waste Management, Inc*., 644 N.E.2d 286, 289 (Ohio 1994).    Moreover, the Ohio Supreme Court has held that a plaintiff may establish such a tort only if "the conduct has been so outrageous in character, and so extreme in

---

[8]  This Court addressed count two as to all defendants in Section 1.B. this Opinion.

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983). *See also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

In support of his claim, plaintiff points only to conduct that this Court has deemed lawful. As such, plaintiff cannot sustain his claim for intentional infliction of emotional distress.

### **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment of Defendants Kmart Corporation and Mark Wyand is GRANTED in PART. The Motion for Summary Judgment of Defendants Eschweiler, Hovan, Murphey and Glandorf is GRANTED. The state law claims filed against Defendants Kmart Corporation and Mark Wyand are REMANDED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/21/08